UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT BOLES, *Individually and on behalf of all others similarly situated,* § § § | | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-13-286 |
| STATE FARM LLOYDS, | § § § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiffs' motion to remand. Dkt. 15. After considering the motion, the response, and the applicable law, the court is of the opinion that plaintiffs' motion to remand should be DENIED.

**I. BACKGROUND**

On June 11, 2009, plaintiff's counsel, the Mostyn Law Firm, and State Farm Lloyds entered into a Rule 11 agreement concerning Hurricane Ike claims. Dkt. 15, Ex. B. The agreement stipulated that State Farm would not remove "any Hurricane Ike lawsuits" to federal court in exchange for the Mostyn Law Firm's agreement to non-suit with prejudice "all claims against individually sued Defendants . . . [and] to refrain from suing individual Defendants on future Hurricane Ike lawsuits." *Id.* The agreement pertained "to all Hurricane Ike cases that either have been filed or will be filed in the future by The Mostyn Law Firm against State Farm Lloyds." *Id.* The parties defined Hurricane Ike as "the storm that occurred on September 13, 2008." *Id.*

On September 27, 2010, plaintiff Ronald Boles filed his original petition against defendant State Farm Lloyds in the District Court of Galveston County, Texas, 122nd Judicial Circuit. Dkt.15,

Ex. C. Boles alleged damages against State Farm for intentionally underpaying his insurance claim related to the destruction his home by Hurricane Ike. *Id.* Based on the nature of his claim, Boles' action was transferred to the multi-district litigation panel created to handle the pretrial management of Hurricane Ike-related claims. Dkt. 15, Ex. D.

Following the transfer, Boles amended his petition on April 8, 2013, significantly altering the nature of the claims against State Farm. Dkt. 1, Ex. A, No. 13. The amended petition was filed by Boles individually, and on behalf of those similarly situated class members, specifically defined as "[a]ll Texas policyholders who were State Farm's policyholders prior to January 2009 and: (1) suffered a covered loss which included roof damage; and (2) were improperly paid a "bundled" or "turnkey" price as settlement for their roof claims." *Id.* at 9.

In the amended petition, Boles asserts, on behalf of himself and the putative class, damages based on the alleged miscalculation and underpayment of insurance claims for roof damage sustained by State Farm policyholders prior to January 2009. *Id.* at 5-10. Specifically, Boles claims State Farm's adjusters failed to properly inspect the plaintiffs' properties. *Id.* Further, State Farm allegedly manipulated the national roof pricing formulas (Xactimate price lists) to fraudulently underpay the plaintiffs' claims by using undervalued "bundled" or "turnkey" roofing replacement prices, when the insurance polices provided for itemized coverage. *Id.* Boles also alleges that State Farm knowingly listed the prices well below the market price, and therefore, violated its duties and obligations to Boles and the class members under their policies. *Id.*

In light of the new allegations made in the amended petition, State Farm filed its notice of removal on May 3, 2013. Dkt. 1. State Farm removed this action on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.*

2

## II. LEGAL STANDARD

A defendant may remove a state civil case to federal court if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). A defendant seeking removal bears the burden of proving federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Because the effect of removal is to deprive the state court of an action properly before it, the removal statute is to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Accident & Indem. Co.,* 491 F.3d 278, 281-282 (5th Cir. 2007). When a defendant seeks to remove a case, the court must look at the complaint at the time the petition for removal is filed in order to determine if jurisdiction exists. *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).

## III. ANALYSIS

Boles challenges State Farm's removal on the basis of the Rule 11 agreement entered into between the Mostyn Law Firm and State Farm. Boles maintains that State Farm improperly removed his Hurricane Ike case in abrogation of the Rule 11 agreement. Boles further asserts that the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), requires remand.[1]

### A. *Breach of Contract*

In his request for remand, Boles relies on the Rule 11 agreement entered into between his counsel and State Farm wherein State Farm agreed not to remove "any Hurricane Ike cases" filed

---

[1] As discussed *infra*, State Farm has sustained its burden of removal on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Therefore, the court's analysis of Boles' argument related to CAFA is unnecessary. *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 544 (5th Cir. 2006) (affirming district court's order which declined to address diversity jurisdiction afforded by § 1332(a) because the court found jurisdiction under CAFA); *Gordon v. Air Liquide-Big Three, Inc.*, 2013 WL 3490725, *8 (M.D. La. 2013).

by the Mostyn Law Firm to federal court. State Farm argues the Rule 11 agreement is inapplicable to this case because Boles' class action claims do not involve exclusively Hurricane Ike claims.

In disputes over the meaning of a contract, the court first looks to the plain language of the contract to determine whether it is ambiguous. *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (applying Texas law). Determining if a contract is ambiguous is a question of law. *Id.* A contract becomes ambiguous when more than one reasonable interpretation may apply to the contract's language. *Id.* If a contract is ambiguous, then the court can consider extrinsic evidence for the purpose of ascertaining the true intentions of the parties expressed in the contract. *Id.* Conversely, if a contract's language is unambiguous, the court will apply its plain meaning and enforce it as written. *Id.*

> The key provisions of the Rule 11 agreement state:
>
> The following agreement will pertain to all Hurricane Ike cases that either have been filed or will be filed in the future by The Mostyn Law Firm against State Farm Lloyds. Hurricane Ike is defined as the storm that occurred on September 13, 2008. This confirms our agreement as follows:
>
> In exchange for the The Mostyn Law Firm's agreement to non-suit with prejudice all claims against individually sued Defendants and The Mostyn Law Firm's agreement to refrain from suing individual Defendants on future Hurricane Ike lawsuits, State Farm agrees not to remove any Hurricane Ike cases filed by your firm to Federal Court. ...

Dkt. 15, Ex. B. At its core, the agreement prohibits State Farm from removing any cases involving Hurricane Ike claims to federal court. The agreement does not limit, however, State Farm from removing cases that do not stem from Hurricane Ike claims. A review of Boles' amended petition and the class allegations reveals that the basis of the lawsuit against State Farm is not exclusively tied to claims arising from Hurricane Ike damage. Instead, the class includes all Texas State Farm

policyholders who were allegedly improperly paid for their covered roof damage claims prior to January 2009.  The class, by definition, includes members who did not have claims related to Hurricane Ike damage.

Boles relies heavily on a recent Fifth Circuit opinion construing the exact Rule 11 agreement at issue in this case.  *Horn*, 703 F.3d at 737.  In *Horn*, the Fifth Circuit considered whether the Rule 11 agreement term "any Hurricane Ike cases" included a class action filed by the Mostyn Law Firm.  *Id.* at 738.  The Fifth Circuit held that the agreement "covers all past, present, and future lawsuits filed by the Firm against State Farm on behalf of homeowners, as individuals or part of a class, whose properties were damage during Hurricane Ike." *Id.* at 739-40.

While the ruling in *Horn* applies to the extent it holds that class actions are encompassed within the language used in this particular Rule 11 agreement, the *Horn* ruling does not dictate that remand is warranted in this case.  This case differs from *Horn* in one significant, and ultimately controlling, way.  The class members in *Horn* all suffered damage to their homes due to Hurricane Ike.  *Id.*  In fact, the class definition in *Horn* explicitly only included those claims involving homeowners whose properties sustained damage "caused by Hurricane Ike."  Dkt. 20, p. 10.

Conversely, in this case, not all of the putative class members' claims involve Hurricane Ike damage.  The amended petition defines the class as "[a]ll Texas policyholders who were State Farm's policyholders prior to January 2009 and: (1) suffered a covered loss which included roof damage; and (2) were improperly paid a 'bundled' or 'turnkey' price as settlement for their roof claims." Dkt. 1, Ex. A, No. 13, p. 9.  The claims in the amended petition, therefore, are not solely based on State Farm's payment policies relating to Hurricane Ike damage claims (as in *Horn*), but

rather on settlement payments made for all roof damage claims, whether or not caused by Hurricane Ike.

Boles contends the court should only look to his individual claim in order to determine whether this is a Hurricane Ike case under the terms of the Rule 11 agreement. While his claim may stem from Hurricane Ike, the expansive class definition encompasses many non-Hurricane Ike related claims. The court cannot ignore the claims of the class as asserted by Boles. *See generally Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (a prerequisite to class certification is a finding tha thte questions common to the class predominate over questions affecting only individual class members).

As this class includes many potential plaintiffs whose homes were not damaged by Hurricane Ike, but simply sustained roof damage for which they were allegedly underpaid by State Farm, this class action does not constitute a "Hurricane Ike case" as contemplated by the language written in the Rule 11 agreement between the Mostyn Law Firm and State Farm. Therefore, State Farm is not precluded from removing this case to federal court under the terms of the Rule 11 agreement.

**B.     *Diversity Jurisdiction Under 28 U.S.C. § 1332(a)***

Now that the court has determined that the Rule 11 agreement does not preclude State Farm's removal, the court will next consider whether State Farm has met its burden establishing diversity jurisdiction under 28 U.S.C. § 1332(a). Under Section 1332(a), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

For diversity to exist in a putative class action suit, diversity need only exist between the named parties, not all the potential putative class members. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). To determine the citizenship of an unincorporated association, like State Farm, the court will examine the citizenship of each of the association's members. *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993). Additionally, the amount in controversy may be satisfied by only one plaintiff's claim in the putative class, and the court may exercise supplemental jurisdiction over the remaining class members' claims, irrespective of whether these claims surpass the minimum amount in controversy threshold. *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 558, 125 S.Ct. 2611 (2005); *In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir. 1995).

As to the citizenship requirement, State Farm has established proper diversity. Boles, the named class representative, resides in and is a citizen of the State of Texas. Dkt. 15, Ex. C. State Farm Lloyds is an unincorporated association of insurance underwriters, so each member's citizenship will dictate if complete diversity exists. Twelve individual underwriters comprise State Farm Lloyds, with eleven members maintaining residences and full time employment in the State of Illinois, and one member maintaining a residence and full time employment in the State of Pennsylvania. Dkt. 1, Ex. F. Boles' citizenship differs from all twelve defendant association members; therefore, complete diversity exists in this case.

The amount in controversy must also be satisfied for this court to exercise jurisdiction. The amount in controversy for a class action will be satisfied if a single named plaintiff's claim exceeds $75,000. *Allapattah Services*, 545 U.S. at 558. When the plaintiff's complaint does not allege a specific amount of damages, the defendant must prove by a preponderance of the evidence that the

amount in controversy exceeds $75,000. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). The defendant can show that the amount in controversy is greater than $75,000 if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The court finds that not only is it apparent from the face of the petition that amount in controversy exceeds $75,000, but State Farm has provided additional evidence, namely a demand letter satisfying this requirement. *See Masco Opertors, Inc. v. Thompson Tractor Co., Inc.*, 2012 WL 3028075, *2 (S.D. Tex. 2012). First, the court can infer from the amended petition that the damages sought from Boles will readily exceed the $75,000 threshold. In addition to costs, interests and attorneys' fees, Boles seeks the following damages: (1) actual damages; (2) mental anguish; (3) treble damages pursuant to the Texas Insurance Code; and (3) compensatory damages, including exemplary damages and damages for emotional distress, economic hardship, and losses due to non-payment of the amount owed under the policy. Dkt. 1, Ex. A, No. 13, pp. 16-17. Given the nature of damages sought, including treble damages, it is facially apparent from the amended petition that Boles' alleged damages will meet the $75,000 amount in controversy requirement. Additionally, and as further confirmation to the court of Boles' alleged damages, Boles previously sent a demand letter to State Farm seeking damages in the amount of at least $343,715. Dkt. 1, Ex. D. Therefore, this court finds it can properly exercise diversity jurisdiction over this case.

### IV. Conclusion

The court finds that the Rule 11 agreement does not preclude State Farm's removal of this case to federal court, and further finds that State Farm has met its burden establishing the requirements of diversity jurisdiction under 28 U.S.C. § 1332(a). Accordingly, plaintiffs' motion to remand (Dkt. 15) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on July 23, 2013.

_____
Gray H. Miller
United States District Judge